Ebeemab, J.,
delivered the opinion of the Court.
This is an action of trespass, commenced in Jefferson county, by the defendant, in error, against the complainants, in ©rror, and one Hodges. A nolle prosequi was entered as to Hodges. The case was tried .by his Honor, Judge Swann and a jury, at August Term, 1867, on a plea of not guilty. The jury, under the charge of. the Court, returned a verdict in favor of the plaintiff against the defendants, for the sum of two thousand dollars.’ A motion for new trial was made, which was overruled by the Court, and defendants prayed an appeal in the nature of a writ of error, to this Court.'
The ground assigned for reversal, in argument here, is, that the evidence does not support the verdict, under the rule laid down by this Court for its action, -where reversal is sought on the facts of the case. It is proper, perhaps, in this case, that we review the leading cases on this question, and re-state the rule to be deduced from them, in precise terms, as there seems to be misapprehension as to what is the rule. It is frequently said here in argument, that this Court will not reverse on the facts of the case, or will not do so where there is any evidence to support it, even the slightest. This is not a correct statement of the rule, as will appear by reference to the eases in which the attempt has been made by the Court to lay down the rule „ with precision, though it may seem to find support in loose dieta, sometimes found in the opinions in our reports.
Among the early cases on this question, is Yarborough v. Abernathy, Meigs’ R., 418. Judge Eeese, de *179 livering the opinion of the Court, says: “This case is only another added to a long list of cases, in -which we have been constrained to repeat that this Court neither can nor ought to weigh and balance the testimony, with a view to disturb the verdict of the jury and the judgment of the Circuit Court. We adhere to, and again announce the principle, as familiar from frequent repetition, as it is obviously correct, that we will set aside verdicts approved by the Circuit Court, in those cases only where the weight of the testimony against the verdict greatly preponderates.”
In the case of Angus v. Dieherson, where the Court refused to set aside the verdict, the question being as to whether the hiring of a slave by Angus was a general or a special hiring, the Court says: “There was evidence conducing to prove that Angus had hired the negro specially to drive his wagon;” and in the conclusion of the opinion they say, “the whole case was left fairly before the jury; and had the verdict been either way, we should not have felt at liberty to have disturbed it.”
In the case of Dodge v. Britain, Meigs’ R., 85, Judge Turley says: “The jury were the proper judges of the credibility of witnesses and weight of the testimony; and this is not a case in which all the proof is on one side; and we have repeatedly said that we will not reverse, if there be any proof by which the verdict can be sustained.” This was a case of conflicting evidence, and the opinion, taken in connection with the facts of the case, only announces the same principle found in the other two cases cited.
*180 la the case of England v. Burt, 4 Hum., 401, the Court, Judge Reese delivering the opinion, after announcing its inflexible adherence to the rale, and the fact that the Court had frequently been called on to repeat it, says: “The rale is, that, in matters of fact in ■civil cases, upon which the jury has rendered a verdict, which the' Circuit Judge has refused to set aside, we will affirm the judgment of the Circuit Court, unless there be a great preponderance of evidence against the verdict.” He then goes on to illustrate the rule, and says: “If four witnesses testify before the jury on the side of the plaintiff, to a given state of facts, and two witnesses testify to opposing facts on the side of the defendant, and the Circuit .Judge refuses to set it aside, this Court will not disturb it under such circumstances.”
The statement of this point by Mr. Meigs, in his Digest, vol. 2, p. 780, as the rule laid down by the Court in the case of Petitt v. Petitt, 4 Hum., 191, has misled some as to the -terms of the rule. His statement is, “that it is an inflexible rule of this Court to suffer a verdict to stand where there is any evidence to sustain it, unless there is error in matters of law.”
This is a correct quotation from a sentence of Judge Turley’s opinion in that case; but it does not give a correct expression of what was the rule on which the Court acted, which was in no wise variant from the one stated by Judge Reese in the cases we have referred to above.
It was a case of contested will, where much testimony had been introduced on both sides, as to the sanity *181 of testator. After commenting on the testimony, and citing much of it, the learned Judge said: . “We have selected this testimony from the record, to show that there was proof before the, jury, upon which their verdict against the validity of the alleged testamentary .paper may be rested. On the other hand, there is much testimony that tends to show that the deceased was of sound and disposing mind and memory. Then follows the quotation selected by Mr. Meigs, , above cited, as to the rule of this Court. It will be seen at once, taken in connection with the facts of the case, and the entire statement oí the learned Judge, that it is precisely the same rule as found in all the previous cases in which the rule has been laid down by the Court.
The same remark may be made in reference to all the subsequent cases in our reports, such as the case of Jones v. Jennings, 10 Hum., 428; Walker v. Galbraith, 3 Head., 315, and other cases that might be cited.
Erom these cases we lay down the rule to be, that this Court will only reverse upon the facts of the case, where there is a great preponderance of evidence against the verdict found by the jury, so that we can see clearly that the judgment of the law upon all the facts shown in the evidence, is not that which the jury have found.
Applying this principle- to the facts shown in the record, the question is, can this verdict be allowed to stand ?
The facts material to be stated are, that in April, 1862, a large party of men started to Kentucky to avoid being drafted for service in the late civil .war, as part of *182 the militia of the State, under a law of the State Legislature, passed before that time.
These men were Union men as they are called in the testimony, and adhered to the Federal Government. They seem to have started in pursuance of a general understanding had between themselves, and to have been regularly organized and officered, as one witness says that at a certain point they waited to be joined by Captain Thornhill’s and Captain Barrett’s companies,” and “that a man named Capps took command of the whole company on the hill beyond Bales’,” and soon after this, as they moved on, they met Gentry West, a son of James T. West, and took him a prisoner; “captured him,” in the language of the witness, and kept him, after dismounting him, and making him walk, until the whole party were captured on Thursday evening, 17th of April, by Confederate cavalry, under command of Captain Ashby. They also • captured' one Bunch, about this time, and took his horse from him.
This party moved on to a place called Fincastle, near which they were attacked by Ashby, and four hundred and twenty of them captured, after some fighting.
There were about one hundred of the party, perhaps, armed with guns, and most of them with pistols. On the way, they captured a lot of guns at Blains’ Cross Boads.
It seems that the old man West, the father of Gentry West, who had been captured by this band, had heard of his capture, and, naturally as a father, was anxious to have him rescued or released if possible, and requested and urged the defendants below to go to Strawberry *183 Plains, and report the route of the “stampeders,” as they ■were called in the testimony, to the troops at that point, that they might be captured, or at any rate, his son released from captivity, which seemed to be the leading object of the old man.
These parties went to Strawberry Plains, got there about eleven o’clock on Wednesday, reported the fact .of the capture of young West, perhaps, to the soldiery there, which seems to have consisted of parts of unorganized companies of infantry. The defendants left soon after-wards, and returned home; were not present at the capture, and had no hand in the attack made by Ashby. That evening, after Mitchell and Nance left,- about as many as one company of the soldiers at Strawberry Plains, marched off, but were seen after their return the next evern-ing, back again in their tents at. Strawberry Plains. No train passed down the road towards Knoxville after Mitchell and Nance were at the Plains, until about four o’clock, p. m., when the freight train passed this" point. There was no telegraph office there by which the parties could communicate with rebel troops at Knoxville; nor was any messenger shown to have been sent to Knoxville; and if started from Strawberry Plains, after Mitchell and Nance reached there, a messenger could not have reached Knoxville in time to have given the information that caused the pursuit of the parties, and their capture, as Ashby seems to have left Knoxville about twelve .o’clock on the day before the capture.
It is shown, too, that the country was full of. rebel scouts, and that many private citizens acted as spies for rebel authorities, and gave them the information deemed *184 important to them. The place of capture of the party, was between forty and fifty miles from Strawberry Plains.
We have given a careful examination to all the testimony in this case, and extracted from it the above statements, as its substance.
- The Court is unable to see any evidence at all in this record, that in the slightest degree connects plaintiffs in error with the capture or imprisonment of the plaintiff below.
The only information they are shown to have given, was to parties at Strawberry Plains. But it was not the troops at Strawberry Plains that captured plaintiff. In fact, it was impossible they should have done so. That troops from Knoxville arrested the plaintiff, is certain. At any rate, Ashby’s Cavalry did it, whether starting from Knoxville in- the pursuit, or from some other point. No word of communication is shown between defendants below, and this cavalry, or any one who had command of it; and for aught that appears from this record, Captain Ashby and his cavalry had never been heard of by Nance and Mitchell, till after the capture of the plaintiff, Haney.
While there is nothing in the proof that shows that Mitchell and Nance had anything to do with the arrest of Haney, there is enough for us to see that the probabilities are that information was communicated to rebel officers in command at Knoxville, by other persons with whom Nance and Mitchell had no connection whatever.
The proof shows that rebel scouts were all over the country, and many citizens acted as spies for the rebels. *185 Is it probable that scouts or spies would have failed to see and report the movements of a body of men that had grown in a day or two to between five and six hundred, who had captured two prisoners and a large lot of guns at Blain’s Cross Roads? We think not-
At any rate, whoever had given the information, it is certain that nothing in this record shows that Nance and Mitchell had anything to do with it farther than to make a fruitless trip to Strawberry Plains, at the request of a distressed father. That it was fruitless, is proven by plaintiff himself, by bringing out the statements of the parties themselves, in examination of his witnesses.
We can safely say in this case, that there not - only is a great preponderance of testimony against the verdict, but that there is absolutely no evidence in the record that supports it. It is evidently the result of passion or of prejudice, and can not be permitted to stand.
There are several other questions that might be discussed in this case, such as the charge of the Court on the subject of a conspiracy, which, to say the least of it, had no application to the case as made in the pleadings, and was well calculated to mislead the jury. And the question as to whether the parties, under the circumstances, having organized into companies, with a commander of the whole band, commencing hostilities themselves, by capturing soldiers of one of the belligerent parties in the war then going on; capturing arms at another place, ■ and all this within the rebel lines, while the war was being actively carried on; we say it is a question of serious doubt, whether such parties are *186 not estopped from claiming exemption from one of tire ordinary incidents that befall men who engage in hostilities, that of being captured, and held as prisoners of war, and being compelled, since they assume the soldier’s prerogative to capture military stores, and make prisoners, to submit to being captured themselves in tarn, and have to suffer without civil remedy, the annoyances and inconveniences, and' even insults of prison life.
We forbear, however, to express any definite opinion on these questions in the .present aspect of the case.
We hold the verdict of the jury is not supported by the evidence, and that his Honor erred in not granting a new trial.
Let the case be reversed and remanded for a new trial.